UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:12-CR-117 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| RICHARD BLACK ) | |

**MEMORANDUM**

Defendant Richard Black ("Defendant") has filed a motion to dismiss the indictment (Court File No. 12). The Government submitted a response in opposition to Defendant's motion (Court File No. 13), and Defendant submitted a reply (Court File No. 17). The Court held a hearing on June 17, 2013, at which time the parties argued their positions and requested additional time to brief a newly raised issue by Defendant. The Court granted the parties' request. To date, a supplemental brief has been filed by the Government (Court File No. 19), a supplemental response has been filed by Defendant (Court File No. 20), and a supplemental reply has been filed by the Government (Court File No. 21).

The issues raised by the parties involve novel questions of law and apply to a unique fact pattern. Therefore, the Court commends counsel on their advocacy for their respective party. After considering the arguments made by counsel both at the hearing and in their briefs, as well as the relevant law, the Court will **DENY** Defendant's motion to dismiss the indictment (Court File No. 12).

I.  **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

In May 1988, Defendant pleaded guilty in Louisiana to engaging in indecent behavior with a juvenile, in violation of La. Rev. Stat. Ann. § 14:81. After serving a term of incarceration,

Defendant was released on June 30, 1992. On June 18, 1992, just days prior to his release, new legislation became effective in Louisiana imposing a ten-year registration requirement for sex offenders upon release from imprisonment; that period would expire after ten years as long as the convicted sex offender did not become subject again to this same chapter in the statute. *See* La. Rev. Stat. Ann. § 15:544. Defendant registered under Louisiana law upon release from prison. His parole ended in 1996.

Defendant was not charged with any subsequent offenses until 2007, when he was charged with aggravated assault on a peace officer with a firearm, in violation of La. Rev. Stat. Ann. § 14:37.2. Defendant was convicted and sentenced to five years in prison. He was released in October 2011 and placed on parole. On October 24, 2011, his parole officer ordered that he register under the sex offender registry law, and Defendant acquiesced. According to Defendant, however, he only registered out of fear his parole might be revoked. On June 7, 2012, a warrant was issued by the state of Louisiana for Defendant's failure to register. On July 20, 2012, Defendant was arrested in Tennessee. Defendant had not registered in Tennessee nor had he updated his registration information in Louisiana.

On September 25, 2012, Defendant was indicted by a federal grand jury and charged with failure to register and update his registration pursuant to the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a) and 42 U.S.C. §§ 16911 and 16913. Now pending before the Court is Defendant's motion to dismiss the indictment.

## II. STANDARD OF REVIEW

Outside the context of the Speedy Trial Act, dismissing an indictment on a defendant's

motion is a significant step for a district court to take. "[D]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).

Motions to dismiss are governed by Rule 12 of the Federal Rules of Criminal Procedure, which permits pretrial consideration of any defense "the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). Rule 12 provides a defendant may bring a motion challenging "a defect in the indictment or information," including "a claim that the indictment or information fails to invoke the court's jurisdiction." Fed. R. Crim. P. 12(b)(3)(B). Generally, a defense can be determined before trial if it involves questions of law instead of questions of fact on the merits of criminal liability. *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir.1997). Accordingly, the defense may use a Rule 12(b) motion to raise for consideration such matters as "former jeopardy, former conviction, former acquittal, statute of limitations, immunity [and] lack of jurisdiction." *Id.* In considering such motions, a trial court may "ordinarily make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder." *Craft*, 105 F.3d at 1126.

## III. DISCUSSION

In light of the parties' arguments at the June 17 hearing and their averments in their supplemental briefs, the Court observes two issues remain for the Court's consideration.[1] The first

---

[1] At the hearing, counsel for Defendant alluded to the fact she may assert equitable estoppel as a grounds for dismissal of the indictment. However, in Defendant's supplemental brief, Defendant concedes that this issue need not be decided by this Court or at this time (*see* Court File No. 20 at

3

issue pertains to whether Defendant is a Tier I or Tier II sex offender for purposes of SORNA. Defendant's classification is relevant because it would have a direct impact on when Defendant's registration period ended under SORNA.[2] In the event the Court determines Defendant is a Tier II offender, the second issue would be whether applying the SORNA requirements would result in both *Ex Post Facto* and Due Process violations.

A.     **Classification under SORNA**

Defendant argues under SORNA he is a Tier I, not a Tier II, offender. The distinction is significant because as a Tier I sex offender, Defendant would only be subject to a fifteen year period of registration, or even possibly a ten year period of registration if he maintained a "clean record" as defined by statute. Given that Defendant was released from prison for committing a sex offense in 1992, Defendant argues his registration period would have expired in either 2002 or 2007. Thus, the time period for registering would have ended well before the instant offense. On the other hand, Defendant acknowledges that as a Tier II offender he would have been subject to a twenty-five year registration period.

As background, Title 18, United States Code, Section 2250 makes it a crime for a sex offender to fail to register under the Sex Offender Registration and Notification Act or "SORNA," 42 U.S.C. §§ 16901 *et seq.* Specifically, 18 U.S.C. § 2250 makes it a crime not to register if the person "is required to register under [SORNA]"; "is a sex offender as defined for the purposes of

---

8-9 n.5).

[2] The Government, in its reply brief, appears to concede that Defendant's registration period under Louisiana law, which was ten years at the time the law became applicable to Defendant, would have expired in 2002. Therefore, the focus now is whether Defendant was still required to register under SORNA.

4

the Sex Offender Registration and Notification Act by reason of a conviction under Federal law . . . or the law of any territory or possession of the United States"; "travels in interstate or foreign commerce"; and "knowingly fails to register or update a registration as required by [SORNA]." 18 U.S.C. § 2250. Although SORNA was passed on July 27, 2006, the statute was not made effective until August 1, 2008. *See United States v. Utesch*, 596 F.3d 302, 311 (6th Cir. 2010). At issue here is whether Defendant was a Tier I or Tier II sex offender and, depending upon his classification, whether he was still required to register.

Sex offenders under SORNA are classified into one of three categories: Tier I, II, or III. A Tier I sex offender is subject to a fifteen year registration period, and with a clean record, that period can be reduced to ten years. 42 U.S.C. § 16915(a)-(b). A Tier II sex offender, on the other hand, is subject to a twenty five year registration period. *Id.* Finally, a Tier III sex offender is generally subject to a registration period of life. *Id.*

The statute defines a Tier I sex offender as "a sex offender other than a tier II or tier III sex offender." 42 U.S.C. § 16911(2). A Tier II sex offender is defined as follows:

> a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and--
>
> (A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:
> . . .
> (iv) abusive sexual contact (as described in section 2244 of Title 18)

42 U.S.C. § 16911(3).

Title 18, United States Code, Section 2244 provides limited guidance regarding the definition of "abusive sexual contact." The Court observes that two provisions in § 2244 could be relevant to Defendant's case and the manner in which "abusive sexual contact" should be defined: (1) 18 U.S.C.

5

§ 2244(a)(3), which pertains specifically to offenses against minors as described in § 2243(a), and (2) 18 U.S.C. § 2244(b), which is more akin to a catch-all provision. Section 2244(a)(3) applies to anyone who "knowingly engages in or causes sexual contact with or by another person" if under § 2243(a) the sexual contact would have been a "sexual act." Section 2243(a) applies to anyone who "knowingly engages in a sexual act with another person who (1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging; or attempts to do so." 18 U.S.C. § 2243(a). The statute defines a "sexual act" as, *inter alia*, "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2).

Section 2244(b), on the other hand, addresses sexual conduct not otherwise covered by the other provisions of § 2244. Section 2244(b) pertains to anyone who "knowingly engages in sexual contact with another person without that other person's permission." "Sexual contact" is defined in the statute as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

The "SMART" Guidelines were promulgated by the United States Attorney General in 2008 pursuant to § 112(b) of Title I of the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. § 16912(b). *See* The National Guidelines for Sex Offender Registration and Notification, Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART"), Office of the Attorney General, 73 FR 39030-01, 2008 WL 2594934 (July 2, 2008). One area in which the SMART Guidelines provide guidance is with respect to determining a sex

6

offender's classification. For instance, the SMART Guidelines provide "jurisdictions generally may premise the determination on the elements of the offense, and are not required to look to underlying conduct that is not reflected in the offense of conviction." *Id.* at *38053. Moreover, while the definition of "sexual act" as stated in the SMART Guidelines is consistent with the language in the statute, *see id.* at *38050, the SMART Guidelines also make an attempt to simplify the process by which courts make a determination as to whether an offense satisfies the criteria of a particular Tier. For example, the Guidelines state "[d]etermining whether a jurisdiction's offenses satisfy the criteria for [Tier II] is simplified by recognizing that the various cited and described offenses essentially cover" what can be grouped into four categories. *Id.* at *38053. One of those categories is "[o]ffenses against minors involving sexual contact--i.e., any sexual touching of or contact with the intimate parts of the body, either directly or through the clothing--and inchoate or preparatory offenses (including attempts, conspiracies, and solicitations) that are directed to the commission of such offenses." *Id.*

Here, the Court must determine whether Defendant--who committed a sex offense in Louisiana in 1988, i.e. Indecent Behavior with a Juvenile--satisfies the criteria of a Tier I or Tier II sex offender. It is undisputed that the offense was punishable by a term of imprisonment for more than one year; therefore, the first criterion for a Tier II sex offender is satisfied. The second and more highly contested issue is whether Defendant engaged in "abusive sexual contact" with a minor. The Court will begin by considering § 2244(a)(3), which appears to be more pertinent because it cross-references another provision that directly applies to offenses against minors. Defendant claims § 2244(a)(3) cannot be met because the provision is dependent upon § 2243(a), which requires a

7

"sexual act" with a minor.[3] Defendant argues his underlying sex offense does not satisfy the definition of a "sexual act," because among other things, there is no indication the offense involved the "intentional touching, not through the clothing, of the genitalia of another person . . . ." The Government argues to the contrary pointing to both a guilty plea transcript in which the court, in listing the elements of the offense, mentioned molestation and the prosecutor, in stating the factual basis, indicated Defendant "fondl[ed] the genital area" of the fourteen-year-old victim.

The state offense at issue is La. Rev. Stat. Ann. § 14:81, which would have read in pertinent part:

> Indecent behavior with juveniles is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person.

Broken down into its elements, the State must show: "(1) the defendant is a person over the age of seventeen; (2) the juvenile is a person under the age of seventeen; (3) there is an age difference greater than two years between the defendant and the juvenile; (4) the defendant committed a lewd or lascivious act upon the person of the juvenile; and (5) the act committed by the defendant was with the intention of arousing or gratifying the sexual desires of either person." *State v. Ruple*, 426 So. 2d 249, 251 (La. Ct. App. 1983). The fourth element is the primary element at issue.

As the parties have pointed out, there is no case that directly addresses whether a violation of § 14:81 should be treated as a Tier II offense. Nonetheless, the Court finds some consolation from the guidance provided in the SMART Guidelines. As noted earlier, the SMART Guidelines provide that a Court can generally consider the elements of the offense to determine an individual's

---

[3] Defendant essentially concedes the other elements of § 2243(a) are satisfied.

classification without having to consider the underlying conduct. One of the elements of the state offense here involves the commission of a "lewd or lascivious act" upon a minor. While this element does not specifically require that the act involve the intentional touching of genitalia not through clothing, it is certainly arguable that such conduct could fall within the broad parameters of a "lewd or lascivious act" against a minor.[4] Taking the SMART Guidelines at face value, the Court would not be required to delve any deeper into the underlying conduct to determine whether the Louisiana offense falls within the purview of Tier II.

Alternatively, applying § 2244(b), the Court reaches the same conclusion. Although Defendant argues § 2244(a)(3) is the more appropriate provision to apply because it applies to offenses against minors, the Court observes that 42 U.S.C. § 16911(3) does not specify a particular provision of § 2244 that must be applied. As the Government has pointed out, § 2244(b) uses the broader term "sexual contact," and that term is defined, *inter alia*, as intentional touching that is "either directly or through the clothing." Thus, even the conduct as described by Defendant would fall within this definition. Moreover, there does not appear to be any dispute that Defendant did not have "permission" to engage in sexual conduct with the fourteen year old victim.

Accordingly, the Court concludes Defendant is a Tier II sex offender. Thus, he is subject to the twenty five year registration requirement.

B.   **Notice Requirement**

Defendant next argues that, even if the twenty five year registration requirement under SORNA applies, the indictment should be dismissed because he lacked notice of the requirement.

---

[4] Moreover, the Court acknowledges that the language highlighted by the Government in the guilty plea transcript, which the Court need not rely upon here, does mention conduct from which it could be inferred the sexual act was not just "through the clothing."

9

Defendant argues holding him in violation of SORNA would in itself be an *Ex Post Facto* violation and a Due Process violation. Specifically, Defendant contends that because he was not advised he had to register under SORNA, applying those requirements now would be punitive since he has not had an opportunity to register. He argues this would violate the *Ex Post Facto* Clause. Alternatively, Defendant argues the lack of notice violates his right to Due Process.

The Government, in response, contends Defendant's arguments are unavailing. First, the Government argues Defendant was not deprived of an opportunity to register and that he did, in fact, register in 2011 when he was released from prison. Second, the Government points out that Defendant's *Ex Post Facto* argument must fail because it is well established that the retroactive application of SORNA does not violate the *Ex Post Facto* Clause. Finally, while acknowledging the law is still developing with regard to due process challenges, the Government contends the majority of courts have determined actual notice under SORNA is not required so long as the defendant had notice under the state's statutory scheme.

Defendant's first argument must fail. Numerous circuit courts, including the United States Court of Appeals for the Sixth Circuit, have already concluded the application of SORNA to defendants convicted prior to its enactment does not violate the *Ex Post Facto* Clause. *See United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012) (relying upon Supreme Court precedent in a related context, it noted the *Ex Post Facto* Clause is not implicated because "SORNA provides for a conviction for failing to register; it does not increase the punishment for the past conviction"); *see also United States v. Coleman*, 675 F.3d 615, 619 (6th Cir. 2012) (citing *Felts*, 674 F.3d at 605-06). This circuit has expressly rejected the argument made by Defendant that having to register under SORNA is a punitive measure.

10

With regard to Defendant's second argument, however, the Court acknowledges the case law is less clear. For instance, in *Felts*, the defendant argued there was a Due Process violation due to lack of notice. 674 F.3d at 604. The defendant was convicted of a sex offense in Tennessee and upon release from incarceration failed to register. At the time, Tennessee had not completely implemented SORNA. In addition to holding that the defendant was required to register even if Tennessee had not completely implemented SORNA, The Sixth Circuit briefly discussed the defendant's due process argument observing that this issue could be problematic if there was an inconsistency between SORNA's requirements and the state law requirements. *Id.* at 604-05. The Sixth Circuit noted two different scenarios where this issue might arise. The first involved a situation where the state law requirements are equal to are greater than that imposed by SORNA. Under those circumstances, there would not be an issue because "[i]f an offender has fair notice of, and fulfills all of the requirements under the state law, then by definition, the offender will fulfill all of the requirements under federal law." *Id.* Thus, "there would be sufficient fair notice to satisfy due process." *Id.* at 606.

The other scenario involved a situation where the state law imposed lesser restrictions. The Sixth Circuit described this scenario as follows:

> The second, potentially more problematic, circumstance, occurs where the requirements under the non-compliant state registry are less onerous than the requirements under SORNA, and the offender may thus lack fair notice of what federal law requires. This is what Felts alleges. For example, 42 U.S.C. § 16915(a) lists different durations of the registration requirement based on the severity of the offense. For a Tier III sex offender, registration is required for life. *Id.* § 16915(a)(3). If a non-implementing state were to require registration for a period less than that mandated by SORNA, and a state official only informed an offender of the state requirement, would an offender who stopped registering after the state-prescribed period violate SORNA?

*United States v. Felts*, 674 F.3d 599, 605 (6th Cir. 2012). The Sixth Circuit never resolved the

11

question, however, because it determined the defendant knew he was required to register under Tennessee law and failed to do so. Therefore, his argument that he lacked notice had to fail. *Cf. United States v. Stock*, 685 F.3d 621, 626 (6th Cir. 2012) (concluding the defendant could not argue he lacked notice when he "admitted in his plea agreement that he knew about SORNA's registration requirement").

Notwithstanding the fact that the latter scenario discussed in *Felts* may be more akin to the facts of this case, a preliminary matter this Court must resolve is whether Defendant had adequate notice. The issue of whether Defendant had adequate notice is in part dependent upon a factual determination that would require a trial of the general issue. In fact, one of the elements the Government must prove in establishing a violation of 18 U.S.C. § 2250 is that Defendant "*knowingly* fail[ed] to register or update a registration as required by [SORNA]." *Id.* (emphasis added). The Government is of the position that Defendant had notice. In particular, the Government notes in its brief that when Defendant was released from incarceration, he actually registered as a sex offender in Louisiana at the instruction of his probation officer. Moreover, at the time he moved to Tennessee, there was an outstanding warrant for his arrest for failure to register. Finally, he failed to register when he moved to Tennessee or update his registration in Louisiana. Defendant, however, disputes these facts. Because the larger issue of whether Defendant had adequate notice is a question for the jury, the Court concludes the Government, and Defendant if he so chooses, should have an opportunity to present evidence on this issue. With that said, once that evidence has been offered at trial, the Court would be willing, upon renewal of Defendant's due process argument, to reconsider this issue.

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendant's motion to dismiss the indictment (Court File No. 12).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**